**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MARY ELIZABETH DELGADO**, | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **EP-25-CV-00026-MAT** |
| **FRANK BISIGNANO, COMMISSIONER** | § | |
| **OF THE SOCIAL SECURITY** | § | |
| **ADMINISTRATION**, | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Mary Elizabeth Delgado ("Plaintiff") appeals from a decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. On May 6, 2025, upon consent of both parties, United States District Judge Kathleen Cardone assigned this case to the undersigned for a memorandum opinion and order pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Rules of the United States District Court for the Western District of Texas. For the following reasons, the Court **ORDERS** that the Commissioner's decision be **REVERSED and REMANDED** pursuant to the fourth sentence 42 U.S.C. § 405(g).

### I.  BACKGROUND & PROCEDURAL HISTORY

Plaintiff was sixty-five years old at the time the Administrative Law Judge ("ALJ") issued her decision on June 14, 2024. Tr. of Admin. R. [hereinafter, "Tr."] at 60, ECF No. 5-2. Plaintiff completed a high school education and had past relevant work as a customer complaint clerk and payroll clerk. *Id.* 60-61. On September 28, 2021, Delgado applied for Title II disability insurance benefits. *Id.* 35. She alleged disability beginning June 16, 2020. *Id.* The claim was denied on June 23, 2022, and again upon reconsideration on September 19, 2023. *Id.*

1

Administrative Law Judge ("ALJ") Tresie Kinnell held a telephonic hearing on May 14, 2024, and later issued a decision denying Plaintiff's claims on June 14, 2024. *Id.* at 33-53. Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council on November 15, 2024. *Id.* at 1. The ALJ's decision became the final decision of the Commissioner at that time.[1] Plaintiff now seeks judicial review of the decision.

On January 31, 2025, Delgado brought this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). She filed her opening brief on May 2, 2025, requesting that the Court vacate the Commissioner's decision and remand her claims for further administrative proceedings. Pl.'s Br. at 20, ECF No. 8. On July 24, 2025, the Commissioner filed a response to Delgado's brief, requesting that the Court affirm the Commissioner's decision. Br. in Supp. of Comm'r's Decision 2, 12 [hereinafter "Def.'s Resp."], ECF No. 17. Delgado filed a reply brief on September 5, 2025. Pl.'s Reply Br. ECF No. 20.

## II.    DISCUSSION

### A.    Standard of Review

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Review is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). "[W]hatever the meaning of 'substantial' in other

---

[1] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *Sun*, 793 F.3d at 508, but it may not "try the issues *de novo*" or "reweigh the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

Generally, "[w]here . . . the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989). However, even if the ALJ commits legal error, "remand is warranted only if the . . . error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009)); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Furthermore, it is plaintiff's burden to show prejudice or harm from the error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

B.       **The ALJ's Evaluation Process**

Eligibility for disability insurance benefits on the basis of disability requires that the claimant be "disabled" within the meaning of the Social Security Act. 42 U.S.C. §§ 423(a)(1)(E), 1382(a). Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 416(i). "A claimant is disabled only if her physical or mental impairment or impairments are so severe that she is unable to do her previous work, and cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work is available in the immediate area where she lives, whether a specific job vacancy actually exists, or whether she would be hired if she applied for such work." *Lopez v. Bisignano*, SA-25-CV-232-OLG (HJB), 2025 WL 4033863, at *3 (W.D. Tex. Dec. 19, 2025) (citing 42 U.S.C. § 423(d)(2)(A)).

In evaluating a disability claim, the ALJ follows a five-step sequential process to determine whether: (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or medically equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from performing other substantial gainful activity.  20 C.F.R. § 404.1520(a)(4); *Salmond*, 892 F.3d at 817.

In cases such as the instant case where the severity of a mental impairment is at issue, ALJs use the psychiatric-review technique ("PRT"), as described in 20 C.F.R. § 416.920a, at steps two and three of the sequential analysis. The PRT requires ALJs to rate the claimant's limitations resulting from a mental impairment in four broad functional areas: (1) understand, remember, or

4

apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 416.920a(c)(3). These functional areas are also known as "paragraph B" criteria. ALJs use a five-point scale to rate these limitations: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If a claimant's limitation in the four areas is "none" or "mild," then the impairment is "not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities." *Id.* § 416.920a(d)(1).

Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC"). 20 C.F.R. § 404.1520(e). The RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* § 404.1545(a)(1). The ALJ determines the RFC by examining "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). When using medical opinions as evidence, the ALJ must assess the persuasiveness of such evidence in her opinion. *Id.* § 404.1520c(a). Persuasiveness is based on several factors that the ALJ must consider, but the ALJ is only required to articulate "supportability" and "consistency" in her decision. *Id.* § 404.1520c(b)(2). The ALJ then uses the claimant's RFC in making determinations at steps four and five. *Id.* § 404.1520(e).

"The burden of proof is on the claimant at the first four steps." *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). If the claimant meets this burden, at step five the burden shifts to the Commissioner "to show that there is other substantial gainful employment available that the claimant is capable of performing." *Fraga v. Bowen*, 810 F.2d 1296, 1301–02 (5th Cir. 1987). If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* at 1302. A determination at any step that the

claimant is or is not disabled "ends the inquiry." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021); *see* 20 C.F.R. §404.1520(a)(4).

### C.    The ALJ's Findings

Here, ALJ Kinnell evaluated Delgado's claims pursuant to the above-mentioned five-step sequential evaluation process. At step one, the ALJ found that Delgado had not engaged in substantial gainful activity since June 30, 2025. Tr. 37. At step two, the ALJ found that Plaintiff had the following severe impairments: chronic pain syndrome, cervical spine stenosis, lumbar spine degenerative disc disease, osteoarthritis of the right shoulder, osteoarthritis of the left knee, gastroesophageal reflux disease, irritable bowel syndrome ("IBS"), and obesity. *Id.* The ALJ specifically found that "claimant's medically determinable mental impairment of generalized anxiety disorder does not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." *Id.* 38. Under the broad functional areas known as the "paragraph B" criteria, she found that Delgado had a mild limitation in the third functional area of concentrating, persisting, or maintaining pace. *Id.* 39. She found that Delgado had no limitation in the other three paragraph B areas. At step three, the ALJ concluded that Delgado's impairments alone or in combination, did not meet or equal the severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* 40.

Next, before going to step four, the ALJ determined that Delgado retained the RFC to perform "light work" as defined in 20 C.F.R. 404.1567(b) except with the following restrictions: "she is able to sustain work while lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 6 hours in an 8-hour workday and sit 5 hours in an 8-hour workday. The claimant can frequently reach overhead with the dominant right upper extremity." *Id.* 41.

At step four, the ALJ found, by comparing Delgado's RFC with the physical and mental demands of her past relevant work as a complaint clerk and as a payroll clerk, that Delgado is

6

capable of performing her past relevant work as actually or generally performed. *Id.* 47. Therefore, the ALJ concluded that Delgado was not disabled under the Social Security Act from June 16, 2020 (her alleged disability onset date), through June 14, 2024 (the date of the ALJ's decision). *Id.* 47-48.

### D.   Analysis

Plaintiff argues in her brief that remand is required for two reasons: (i) the ALJ's decision failed to explain the omission a mental limitation from the RFC and (ii) the ALJ erred as a matter of law by failing to evaluate Plaintiff's subjective symptom testimony. Tr. at 7. The Court addresses each argument below.

### 1)   The ALJ's Decision Not to Include any Mental Limitations in the RFC was Not Erroneous

The first issue on appeal concerns the ALJ's decision not to include any mental limitations in the RFC, despite finding mild limitations in one of the functional areas of the paragraph B listings at step two. Because the ALJ's opinion makes clear that she did consider all of Plaintiff's mental limitations, including those that are non-severe, she did not commit reversible error in choosing not to incorporate mental limitations in the RFC.

To properly consider a claimant's impairments, the ALJ must consider all of a claimant's medically determinable impairments, all the evidence in the record, and the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. 20 C.F.R. §§ 404.1545(a)(1)–(3), (e); *id.* § 416.945(e); *see also* Titles II & XVI: Med. Impairments That Are Not Severe, SSR 96–8P, 1996 WL 374184, at *5 (S.S.A. 1985); *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 488 (W.D. Tex. 2022) ("Thus, even where—as is the case here—an ALJ finds that a claimant's medically determinable mental impairment isn't severe, the ALJ must still consider its impact when assessing the claimant's residual functional capacity."). This is because

even non-severe limitations may combine with other severe impairments to prevent an individual from doing past relevant work or narrow the range of work that the individual can perform. SSR 96-8p, 1996 WL 374184, at *5; *see also Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) . Yet, the ALJ is not required to "comment on every piece of evidence'" in their written opinion. *Trillo v. O'Malley*, No. EP-23-CV-00320-ATB, 2024 WL 4653190, at *6 (W.D. Tex. Nov. 1, 2024) (quoting *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)).  Likewise, procedural perfection is not required; the ALJ must only build an accurate and logical bridge from the evidence to the RFC.  *Id.*

So long as the ALJ properly considers a claimant's mental impairments, an ALJ does not commit legal error in excluding limitations from the RFC.  *See Hernandez v. Comm'r. of Soc. Sec.*, 748 F. Supp. 3d 442, 448 (W.D. Tex. 2024) ("[A]n ALJ does not commit legal error by declining to include mental limitations in a claimant's RFC, so long as the ALJ's opinion makes clear that he considered the limiting effects and restrictions of all impairments in the RFC analysis."); *Jakobs v. Comm'r of Social Security*, SA-22-CV-01349-OLG, 2023 WL 7138684, at *5–6 (W.D. Tex. Sept. 15, 2023) (holding that the ALJ's omission of mental limitations from the RFC was not a legal error, despite finding mild limitations in the paragraph B criteria at step two and agreeing with a medical opinion that found the same, because the ALJ properly considered the plaintiff's mental impairments); *Boller v. Comm'r, SSA*, No. 421CV01001SDJCAN, 2022 WL 18586837, at *10 (E.D. Tex. Dec. 12, 2022), *report and recommendation adopted*, No. 4:21-CV-1001-SDJ, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023) ("Thus, unlike in *Castillo*, where the ALJ singularly relied on the non-severity finding in his RFC assessment, the same did not occur here where the ALJ relies on other medical evidence and dedicated multiple paragraphs in explaining his rationale.")

8

According to Plaintiff, the ALJ erred by finding that Plaintiff "has a *mild* limitation in concentrating, persisting, or maintaining pace. However, the residual functional capacity (RFC) does not account for this limitation and no explanation is given for its omission. Failing to explain the omission of a mental limitation from the RFC constitutes harmful error." Pl.'s Br. 8 (emphasis in original).

In support of her argument, Plaintiff cites an opinion from this district where the Court vacated a finding of non-disability because of the ALJ's failure to adequately explain his reasons for not including any mental limitations in the RFC, despite a mild rating finding at step two. Pl.'s Br. 12; *see Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 490 (W.D. Tex. 2022). There, the court reversed because the ALJ treated the non-severity finding at step two as a reason not to consider any mental functional limitations at the RFC determination stage and "relied on the alleged non-severity of Castillo's depression as a basis not to impose any mental limitations," without explaining why the mild paragraph B limitations did not translate into RFC restrictions. *Castillo v. Kijakazi*, 599 F. Supp. 3d at 488.  Moreover, there the ALJ's discussion of the evidence of mental impairments was only four brief sentences concluding the claimant had normal mental status examinations and could generally perform daily living activities. *Id.* at 490.

Here, by contrast, the ALJ did not rely on the non-severity finding to bypass the RFC inquiry; instead, she discussed Plaintiff's GAD, adult function reports, state-agency opinions, consultative examination, and longitudinal treatment records in the RFC analysis and therefore properly addressed mental limitations. Because the decision shows that the ALJ considered whether mental functional limitations were warranted and built a logical bridge from the evidence to an RFC without mental restrictions, *Castillo*'s error rationale does not apply.

The Commissioner responds that "contrary to Plaintiff's assertions, the ALJ's RFC analysis revealed that he considered Plaintiff's non-severe GAD in evaluating Plaintiff's subjective symptoms, adopting the persuasive prior administrative findings, and evaluating the medical opinion of Dr. Schutte as required under Agency regulations." ECF No. 17 at 8. Additionally, the Commissioner argues that *Castillo* is inapposite here because there "[t]he court found that the ALJ therefore committed legal error by relying on the non-severity of Castillo's depression to avoid his obligation to consider the impact of Castillo's depression on Plaintiff's RFC. Here, by contrast, the ALJ's RFC analysis does not contain any indication that the ALJ relied on the non-severity of Plaintiff's GAD as a basis not to include mental limitations in the RFC." *Id.* at 9 (citations omitted).

A reviewing court must defer to an ALJ's RFC decision when substantial evidence supports it. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The Fifth Circuit is clear that an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)); *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993). This substantial evidence inquiry does not merely involve a query of the record for "isolated bits of evidence that support the ALJ's decision." *Danny R. C. v. Berryhill*, No. 3:17-CV-1682-BH, 2018 WL 4409795, at *15 (N.D. Tex. Sept. 17, 2018) (citing *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986)).

In determining a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence" of record including any "medical opinions" and "prior administrative medical findings." 20 C.F.R. § 404.1545(a)(3) (cross-citing 20 C.F.R. § 404.1513); *id.* § 404.1513a(b)(1) (cross-citing 20 C.F.R. § 404.1520c).

For claims filed on and after March 27, 2017, courts review an ALJ's explanation of a rejected medical opinion under the rubric of 20 C.F.R. § 404.1520c. *E.g., Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past."). In *Webster*, which involved a claim filed in 2019, the Fifth Circuit recited from *Kneeland* that "[a]n ALJ usually cannot reject a medical opinion without some explanation." *Id.* at 718 (citing *Kneeland*, 850 F.3d at 760). In finding that the ALJ there "articulated his reasons for rejecting" an examining physician's opinion, the court noted that the ALJ considered both the consistency and supportability of the physician's opinion "[a]s is required by Section 404.1520c" and that the ALJ found that the physician's opinion was only supported by his own findings and was inconsistent with the claimant's medical history and longitudinal treatment records. *Id.* at 719. It concluded that though the ALJ did not accept the physician's opinion, "it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards." *Id.*

"Section 404.1520c does not set forth a standard for sufficiency of an ALJ's explanation and articulation, though several appellate courts have. 'The depth of explanation required is not extensive.'" *Anderson v. O'Malley*, No. EP-24-CV-00313-KC-ATB, 2025 WL 2182331, at \*5-6 (W.D. Tex. May 15, 2025), *report and recommendation adopted in part*, No. EP-24-CV-313-KC-ATB, 2025 WL 1861130 (W.D. Tex. July 4, 2025) (citing *Lynch v. Comm'r Soc. Sec.*, No. 23-1982, 2024 WL 2237961, at \*2 (3d Cir. May 17, 2024) (collecting cases)). "Further, the ALJ 'need not reiterate the magic words "support" and "consistent,"' so long as he 'weave[s] supportability and consistency throughout [his] analysis.'" *Id.* (quoting *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024)). "At base level, in reviewing an ALJ's reasoning for, and explanation

11

of, his findings, 'common sense, not technical perfection, is our guide.'" *Id.* (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)).

In this case. The ALJ explained that "[a]fter a review of the evidence, including hearing testimony, the undersigned finds the longitudinal evidence of the record failed to show that acquired hypothyroidism and Grave's disease, chronic maxillary sinusitis and seasonal allergies, mixed hyperlipidemia, hypertension, migraines, and vision impairments have caused more than minimal impact on the claimant's functioning. As such, the aforementioned impairments are non-severe and have no bearing on the claimant's residual functional capacity assessment. The claimant's medically determinable mental impairment of generalized anxiety disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe. Prior to the alleged onset date, she had a history of mental health issues (Exhibit 4F). In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." Tr. 38.

Here, at step two when analyzing Claimant's paragraph B limitations, the ALJ relied on Exhibits 5E and 8E, both claimant's Adult Function Reports dated 01/28/2022 and 05/23/2023 respectively. Tr. at 39. He noted that in the area of concentrating, persisting, or maintaining pace, "the claimant has a mild limitation. She contended she had issues completing tasks, concentrating, and following instructions. (Exhibits 5E, 8E/6). On the other hand, the claimant stated she could prepare simple meals, complete household chores, drive, shop for necessities, manage money, watch TV, read, use e-mail, and attend church (Exhibits 5E, 8E/2-8). The claimant is able to concentrate and maintain pace with the tasks outlined above. The ability to complete these tasks

and activities demonstrates the claimant only has mild limitations in this area." Tr. 39. The ALJ determined that Plaintiff had no limitations in the other three areas of paragraph B. *Id.*

Specifically, the ALJ explained that "[t]he limitations identified in 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 . . . . The mental residential functional capacity assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment*. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis. Furthermore, the overall evidence of record supports a finding that any other condition, not specifically mentioned in this decision, but which may be mentioned briefly in the record, is not considered severe." Tr. 40 (emphasis added).

The ALJ is correct that the paragraph B criteria are not an RFC. An impairment finding at step two does not mandate a finding of a specific limitation in the RFC. *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987) (per curiam); *Walker v. Colvin*, No. 3:14-CV-1498-L, 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) ("[S]everal Texas federal courts have found that an ALJ does not err solely by finding an impairment severe at step two and failing to attribute any limitation that impairment in his RFC assessment."). Courts in this circuit have held that the ALJ is not required to explicitly include the claimant's paragraph B limitations in his hypothetical to the vocational expert, as long as these limitations are adequately incorporated into the RFC, and the hypothetical "tracks" the RFC. *See e.g.*, *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013); *e.g., Halterman ex rel. Halterman v. Astrue,* No. 11-0630, 2012 WL 3764051, at *10 (W.D. La. July 20, 2012); *Barr v. Astrue,* No. 311–CV–1349–BF, 2012 WL 2358307, at *6 (N. D. Tex. June 21, 2012).

The Court agrees with this approach. The functional limitations found in paragraph B are simply used to rate the severity of the claimant's mental impairments at steps 2 and 3. SSR 96–8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996). The mental RFC assessment requires a more detailed analysis in which the ALJ itemizes the paragraph B limitations and expresses them in terms of work-related functions, including the abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." *See id.* at *3–6. While the ALJ must consider the claimant's "paragraph B" functional limitations when determining the mental RFC, he is not required to incorporate them into his RFC assessment "word-for-word." *Westover v. Astrue*, No. 4:11-CV-816-Y*, 2012 WL 6553102, at *8 (N.D. Tex. Nov. 16, 2012); *Owen v. Astrue,* No. 3:10–CV–1439–BH, 2011 WL 588048, at *20 (N.D. Tex. Feb. 9, 2011). The question is whether the ALJ considered the limitations in the RFC directly corresponding with the mild paragraph B finding at step two and whether substantial evidence supports the ALJ's mental RFC.

> **(a) The ALJ Properly Considered Plaintiff's Paragraph B Limitations and Substantial Evidence Supports the ALJ's Mental RFC**

In this case, the ALJ engaged in a thorough discussion of Plaintiff's adult function reports, her mental limitations, and the medical evidence when determining Plaintiff's RFC. First, the ALJ analyzed both of Plaintiff's adult function reports, stating "she had issues with lifting, squatting, bending, standing, reaching, walking sitting, kneeling, hearing, stair climbing, seeing, and using her hands (Exhibits 5E, 8E/6). She also noted problems with memory, completing tasks, concentrating, understanding, and following instructions. The claimant lives with her husband (Exhibits 5E, 8E/1). On a typical day, she specified she took care of hygiene, ate, prayed, cleaned up, watched TV, napped, made calls, took medication, did chores, prepared meals, and went to

14

bed (Exhibits 5E, 8E/2). The claimant also acknowledged that she took care of a pet service dog. In addition, she indicated she had issues with personal care and needed reminders to take care of personal needs, grooming and to take medication (Exhibits 5E, 8E/2-3). The claimant admitted she could prepare simple meals daily, complete household chores and yardwork, drive, go out alone, manage money, and shop in stores, by phone, and by computer (Exhibits 5E, 8E/3-4). She also admitted that she enjoyed reading, watching TV, praying, and doing craft projects. The claimant stated she spent time with others in person, on the phone, by texting, and via video chat. Additionally, she specified she went to church and the movies on a regular basis, and she had no issues getting along with others or authority figures (Exhibits 5E, 8E/5-7)." Tr. 42.

The ALJ considered Plaintiff's testimony that "she had issues with anxiety." Tr. at 42. Plaintiff "explained that she experienced anxiety when she was working small businesses, and she did not realize it was anxiety at the time." *Id.* She "elaborated that she could not stop crying at the time and it was 'horrible.'" *Id.* at 42-43. "Additionally, she indicated she felt useless, and she felt like she panicked. However, [she] acknowledged that medication helped." *Id.* at 43.

Here, the ALJ considered the prior administrative findings provided by the State Agency as "generally persuasive." *Id.* at 46. The ALJ specifically noted that "[t]he State Agency medical consultants found the claimant's anxiety was non-severe." *Id.* The State Agency's initial disability determination by a Mr. Pinkston, notes that Plaintiff has no limitation in the paragraph B area of concentrating, persisting, or maintaining pace, and lists no Mental Residual Functional Capacity. ECF No. 5-3 at 86, 89 (Ex. 1A). The State's Disability Determination at the Reconsideration Level performed by Robert B. White, Ph.D., gives Plaintiff a mild limitation in the paragraph B areas of concentrating, persisting, or maintaining pace and of interacting with others, and also lists no Mental Residual Functional Capacity. ECF No. 5-3, 96, 98 (Ex. 3A). The ALJ concluded "[a]fter

15

a review of the evidence, including hearing testimony, the undersigned finds the State Agency's findings are generally consistent with and supported by the evidence of the record." Tr. 46. Therefore, the ALJ properly considered both prior administrative findings by the State Agency's medical consultants.

The ALJ rejected the opinion of Dr. Schutte regarding Plaintiff's mental condition— that Plaintiff's "ability to reason and make occupational, social, and personal adjustments were moderately impaired due to anxiety and depression" Tr. at 46. The ALJ made this determination after a review of the medical evidence, including hearing testimony, Dr. Schutte's opinion was not consistent with or supported by the evidence in the record. *Id.* Additionally, the ALJ noted that while Dr. Schutte's opinion that "the claimant had moderate restrictions in reasoning and making occupational, social, and personal adjustments, the results of [Dr. Schutte's][2] own exam were generally normal apart from 'somewhat limited' attention and concentration." *Id.* at 46-47. Finally, the ALJ explained that "even Dr. Schutte found the claimant's cognitive functioning was 'grossly intact, her memory was normal, her thought process and eye contact were good, and she was talkative and cooperative. Similarly, the longitudinal evidence of record regularly revealed no psychiatric symptoms, including anxiety and depression, while mental status exams were normal . . . These facts fail to support a moderate restriction in her ability to reason and make occupational, social, and personal adjustments." *Id.* at 47.

Although the ALJ found that Plaintiff's GAD was not a severe impairment, his decision clearly reflects that he considered Plaintiff's mental functioning when performing his RFC analysis. As described above, the ALJ considered Plaintiff's medical evidence, her Adult Function Reports, State Agency Reports by Mr. Pinkston and Dr. White, Plaintiff's testimony, and explained

---

[2] The Court notes that in her decision, ALJ Kinnell refers to Dr. Schutte as "Dr. Scutte."

16

why he rejected Dr. Schutte's medical opinion in fashioning the RFC. Because "the ALJ sufficiently considered [Plaintiff's] mental impairments in calculating the RFC, [he] did not err by not including any mental limitation in the RFC." *Gonzales*, 2016 WL 107843, at *6. In sum, the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis and therefore did not commit legal error by declining to include mental limitations in Plaintiff's RFC. *See id.*; *Goins v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-870-P, 2023 WL 4475633, at *6 (N.D. Tex. June 16, 2023). Moreover, substantial evidence supports the exclusion of mental limitations in the RFC here. This case is therefore not analogous to *Castillo* as Plaintiff argues and does not require remand. *See Jakobs*, 2023 WL 7138684, at *6.

### (b) The ALJ's Failure to Resolve Inconsistencies was Harmless Error

Plaintiff argues that "the ALJ did not discuss the inconsistency between Mr. Pinkston and Dr. White's [State Agency medical consultants] opinions regarding Plaintiff's abilities to concentrate, persist, or maintain pace and failed to reconcile these equally persuasive medical opinions," that argument, however, is of no moment. Pl.'s Br. at 11. Plaintiff is correct that the ALJ did not resolve the differences as to the consultants' limitation rating in the paragraph B limitations. However, SSR 96-8p recognizes that a "paragraph B" finding is different from an RFC and does not necessitate a particular RFC determination. *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment...."). Ultimately, the "responsibility to determine a claimant's RFC belongs solely to the ALJ." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

Moreover, even assuming that the ALJ erred by not resolving differences in the reports, the error would be harmless in light of the ALJ's other findings and the requirements set out in the DOT. The ALJ found that Plaintiff could perform her past relevant work as a customer complaint

17

clerk and payroll clerk, each requiring reasoning levels of three and four respectively. *See* DOT 241.367-010 (requiring reasoning at level three); DOT 215.382-014 (requiring reasoning at level four). At level three, an employee must be able to "carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C. At level four, an employee must be able to "solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists" and "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Id.* Plaintiff fails to show that even if the alleged inconsistencies in the State Agency medical consultants' opinions regarding Plaintiff's paragraph B limitations were explained or resolved, that she would not be able to meet a least level three reasoning. And as the ALJ found, this would mean she would still be able to perform her past relevant work as a customer complaint clerk. Tr. 47. If the claimant can still perform past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv); *see Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013) ("[E]ven if [Plaintiff] could only perform the job of bookkeeper," which was one of four jobs that ALJ found constituted past relevant work, "that job is sufficient to support the ALJ's step-four determination."); *Lind v. Astrue*, 370 F. App'x 814, 817 (9th Cir. 2010) ("Any error by the ALJ in considering jobs that did not qualify as past relevant work was harmless because the ALJ found that [Plaintiff] could perform her past relevant work as a customer service representative, and the ability to perform one of her past jobs is sufficient to meet the standard.").

Plaintiff also contends that the ALJ erred by not incorporating "all the impairments or limitations supported by the evidence in the record and recognized by the ALJ into his hypothetical question." Pl.'s Br. at 14 (citing *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002)). Plaintiff is mistaken, however, because the Fifth Circuit does not require hypotheticals to include

18

all impairments or limitations recognized by the ALJ. Instead, the Fifth Circuit requires that hypotheticals posed to vocational experts must incorporate all *disabilities* recognized by the ALJ, not all limitations in the record as Plaintiff suggests. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . a determination of non-disability based on such a defective question cannot stand."). In this case, the ALJ asked the vocational expert several hypotheticals about work a person with Plaintiff's RFC can perform. Tr. at 79-82.

Moreover, at steps 4 and 5, when determining whether work exists for the claimant, the ALJ's hypothetical question to a VE must only "reasonably" incorporate the claimant's disabilities that the ALJ recognized in his RFC assessment and are supported by the record. *See Bowling,* 36 F.3d 431, 436 (5th Cir.1994); *Halterman,* 2012 WL 3764051, at \*10. "Because the ALJ is not required to incorporate verbatim the paragraph B limitations into his RFC assessment, he should not be required to incorporate them verbatim into his hypothetical to the VE—as long as he accounts for them in his RFC assessment." *Berry v. Astrue*, No. 3:11-CV-02817-L BH, 2013 WL 524331, at \*22 (N.D. Tex. Jan. 25, 2013), *report and recommendation adopted*, No. 3:11-CV-2817-L-BH, 2013 WL 540587 (N.D. Tex. Feb. 13, 2013). Here, because the ALJ's questions to the VE incorporated the RFC she had determined and the ALJ properly considered Plaintiff's paragraph B impairments when crafting her RFC, there was no error.

### 2)  The ALJ's Assessment of the Plaintiff's Physical Impairments

The second issue on appeal concerns Plaintiff's subjective symptoms at her hearing. Plaintiff argues that "[t]he ALJ made a conclusory and boilerplate finding that Plaintiff's statements regarding her [irritable bowel syndrome, back pain, and neck pain] symptoms could

19

reasonably be expected to cause some of the alleged symptoms; however, found that they were not entirely consistent with the evidence for the reasons explained in the decision (Tr. 43). However, the ALJ never provided any explanation, as he promised to do. In fact, he performed no meaningful analysis of the Plaintiff's subjective symptom reports whatsoever." ECF No. 8 at 19. Plaintiff insists that this failure to evaluate Plaintiff's subjective testimony about her irritable bowel syndrome, back pain, and neck pain is harmful error and argues that the legal analysis performed was not sufficiently specific to make clear that the credibility factors in 20 C.F.R. § 404.1529(c)(3) were considered. *Id.* In sum, Plaintiff claims that "[t]he ALJ's failure to evaluate Plaintiff's subjective testimony regarding her pain and other disabling symptoms constitutes reversible error under Fifth Circuit precedent. The ALJ's conclusory statement, devoid of any articulated analysis of the credibility factors outlined in 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p, [do] not satisfy the substantial evidence standard." ECF No. 8 at 20.

Defendant responds that "[s]ubjective symptom evaluations are the province of the ALJ," and that the ALJ properly discussed the evidence in Plaintiff's case. ECF No. 17 at 10, 11 (citing *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) ("The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled."). Defendant argues that the ALJ "detailed substantial medical and other evidence that was inconsistent with Plaintiff's proposed subjective complaints," and therefore "considered the relevant regulatory factors when assessing Plaintiff's symptoms." *Id.* 10, 11.

In determining a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence" including the claimant's own "descriptions and observations of [her] limitations from [her] impairment(s), including limitations that result from [her] symptoms, such as pain." 20

20

CFR §§ 404.1545(a)(3), 416.945(a)(3). The ALJ is required to "evaluate the intensity and persistence of [her] symptoms," considering "all of the available evidence, including [her] medical history, the medical signs and laboratory findings, and statements about how [her] symptoms affect her." *Id.* §§404.1529(c), 416.945(c). Social Security Ruling (SSR) 16-3p, a sub-regulatory policy, explains that ALJs will assess whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." Social Security Ruling 16–3p (SSR 16-3p), 2017 WL 5180304, at *8 (Oct. 25, 2017). This is a two-step process where the ALJ first must "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] symptoms, such as pain." *Id.* at *3.

"In considering the intensity, persistence, and limiting effects of [Plaintiff's] symptoms, [the ALJ is required to] examine the entire case record, including the objective medical evidence; [Plaintiff's] statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the [Plaintiff's] case record." *Id.* at *4. This requires the ALJ to evaluate the symptoms experienced by the claimant by looking to the objective medical evidence, the claimant's statements, medical sources, and several other factors, including daily activities, aggravating symptoms, pain characteristics, treatment, medication, etc. *Id.* at *3-6. In performing this evaluation, the ALJ is not, however, required to articulate expressly every regulatory factor or reason in making this determination. *See Undheim v. Barnhart*, 214 F. App'x 448, 451 (5th Cir. 2007). Furthermore, the court must give "judicial deference" to the ALJ's evaluation of the plaintiff's subjective complaints "if [it] is supported by substantial evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

Here, the ALJ concluded at step-one, there was an underlying medically-determinable impairment that could reasonably be expected to produce Plaintiff's symptoms.   The ALJ stated she "considered all symptoms and the extent to which these symptoms can be reasonable accepted consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Tr. 41. She found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained." Tr. 43.

The ALJ's discussion of IBS is included in a portion of the decision discussing the Plaintiff's various physical ailments. Specifically, the decision discusses the Plaintiff's June 17, 2023 physical evaluation where she complained of back, neck and knee pain issues (musculoskeletal and neuropathy issues) and abdominal issues including IBS. Tr. 45. As part of its assessment of these conditions, the ALJ concluded generally, without referencing a particular condition, that the "claimant admitted she could prepare simple meals daily, complete household chores and yardwork, driving, go out alone, manage money, and shop in stores . . . [and] walk two miles before needing a three-to-give minute break." *Id.* at 42.

### (a) Neck, Back, and Neuropathy Issues

The ALJ discussed multiple medical exams describing Plaintiff's normal musculoskeletal results. At a March 3, 2021, yearly medical visit, "[t]he claimant also stated she had lower bilateral abdominal pain and she was under stress. A review of symptoms was negative for any musculoskeletal or neurological symptoms including joint pain and stiffness and muscle weakness." *Id.* at 44.  "In clinic records from July 26, 2021, the claimant acknowledged that her sacral pain resolved, and she had neuropathic pain in her feet." *Id.* The ALJ also wrote that "Medical staff found her chronic pain syndrome was stable." *Id.* Further, the ALJ discussed her June 17, 2023 physical examination where Plaintiff "complained of neuropathy, back and knee

22

problems, and irritable bowel syndrome. An x-ray study of the lumbar spine revealed signs of moderate degenerative changes . . . . A left knee x-ray also showed signs of moderate right knee osteoarthritis. However, the results of a range of joint study were generally normal." *Id.* Additionally, the ALJ explained that at a July 27, 2023, examination, "the claimant was noted to ambulate without apparent difficulty, and she was not in any acute physical distress." *Id.* at 45.

Consequently, considering the totality of the evidence discussed by the ALJ in reaching her decision, it is clear the ALJ considered the relevant factors when assessing Plaintiff's subjective symptoms regarding back and neck pain.  The ALJ adequately considered objective medical evidence, Plaintiff's own statements, her daily activities, treatment, and medication pertaining gastroesophageal reflux disease, back pain, and neck pain. Therefore, the ALJ's RFC findings are consistent with the medical evidence in the record and supported by substantial evidence, with regard to back and neck pain.

### (b) Plaintiff's Irritable Bowel Syndrome Testimony

Notably, the Plaintiff identified IBS as the most serious of her conditions, noting "she had the most issues due to irritable bowel syndrome." *Id.* The ALJ detailed the Plaintiff's serious difficulties with this condition. She noted Plaintiff's testimony that her bowel movements would occur slowly over hours and she would not be aware they were happening resulting in her soiling her pads. *Id.* Further, the ALJ noted "[w]hen asked if she wore Depend underwear, she admitted that it depended on what she was doing if she would wear it. The claimant specified testified [sic] that she did not usually wear them at home, she had to check her clothes every 15 minute [sic], she did not wear them all of the time, and Depends helped." *Id.*  Immediately following the discussion regarding the Plaintiff's significant struggles with IBS, the ALJs segued into a discussion of the Plaintiff's relatively unaffected home activities, described above (*e.g.*, Plaintiff is able to engage in daily living activities such as driving, cleaning, and cooking).  In the following paragraph, the

23

ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record." *Id.* The ALJ, then lists the various physical conditions claimed by Ms. Delgado—including IBS—and concludes that "apart from diagnosis, the overall evidence of the record failed to show the claimant experienced any symptoms from the aforementioned impairment(s) that are debilitating and disabling during the relevant timeframe." *Id.*

When the evidence demonstrates a basis for claimant's subjective complaints, "the ALJ's unfavorable credibility determination will not be upheld unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints." *Wilson v. Barnhart*, 129 F. App'x 913, 914 (5th Cir. 2005). While "[a]n ALJ 'is bound to explain his reasons for rejecting a claimant's [subjective complaints],' he is not required to 'follow formalistic rules in his articulation.'" *Hernandez v. Astrue*, 278 F. App'x 333, 339 (5th Cir. 2008). Any credibility determination must be "grounded in the evidence and articulated in the determination or decision." 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ's decision does not articulate specific reasons for discrediting Plaintiff's testimony regarding the intensity, persistence and limiting effects of her IBS. While an ALJ is not required to follow formalistic rules in articulating his credibility determination, he must articulate something. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) ("[W]hen the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain."). However, the decision offers a limited review of the IBS condition beyond the Plaintiff's own detailed description, and notes only she was diagnosed with IBS. *See* Tr. 42-45. This is in sharp contrast with, for example, the ALJ's detailed analysis and discussion of her anxiety issues.

24

And herein lies the concern for this reviewing Court. In the decision, it is clear that the claimant flags her IBS as the medical condition causing her "the most issues," and described in detail her incontinence and other the serious effects of this condition. Tr. 43. The ALJ asked her some questions about how she managed this condition, prompting the Plaintiff to testify that "she had no control over her bowel movements, [and] *had to stay at home*." *Id.* (emphasis added). However, the record certainly could have been amplified and clarified on this point; the Plaintiff's statement says nothing about the effects of IBS on Ms. Delgado's life, and, more pointedly, on her work life, ability to work as a customer complaint clerk and payroll clerk, jobs which by their very nature would involve interaction with co-workers and the public, and which would appear to be affected by this stigmatizing condition. An ALJ is required to fully and fairly develop the facts relative to a claim for disability benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Nonetheless, a decision may only be reversed "if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

The ALJ's credibility determination may have been generally well reasoned, but it is impossible for the Court to know what substantial evidence supported her determination as to IBS when the ALJ failed to articulate any specific reasoning or analysis of the factors in 20 C.F.R. § 404.1529(c)(3), as discussed in *Wilson v. Barnhart*, 129 F. App'x at 914. The only objective evidence discussed in the decision is the fact of the IBS diagnosis itself. There is no objective evidence in the record that is discussed to address the Plaintiff's subjective and detailed evidence about her IBS.

To warrant reversal and remand, the error committed cannot be harmless. The ALJ's error was not harmless here as demonstrated by the hypotheticals posed to the vocational expert and the

expert's answers in response. *See* Tr. 78-82. At the hearing, the vocational expert testified that someone with limitations like those in Plaintiff's RFC could perform Plaintiff's past relevant work. Tr. 79. But at the hearing, when the ALJ asked if that same hypothetical individual could perform the same past relevant work with "an additional 15-minute break each morning and one each afternoon, and that's over and beyond regular breaks," the vocational expert indicated that depended on an accommodation from an employer but that in her opinion, "there would be no jobs available." *Id.* Based on this record, there is no way to determine whether and to what extent additional limitations in the RFC assessment to account for IBS would have affected the disability determination. Because it is not "inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err," the error here is harmful. *Keel*, 986 F.3d at 556, *see also* SSR 96-8p ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").

The Court therefore **ORDERS** the case be reversed and remanded for further proceedings consistent with this opinion.

### III.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the decision of the Commissioner be **REVERSED** and the action be **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**SIGNED** this 17th day of March, 2026.


MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

26